**FIRST DIVISION**
**BARNES, P. J.,**
**DOYLE, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

June 26, 2023

# In the Court of Appeals of Georgia

A23A0523. WALLER v. THE STATE.

DOYLE, Presiding Judge.

A jury found Sanchez Waller guilty of child molestation.[1] On appeal, Waller argues that trial counsel provided ineffective assistance and that the trial court abused its discretion in overruling Waller's hearsay objection. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict,[2] the evidence shows that Waller was a paraprofessional at a middle school. Waller supervised the victim as part of an advanced unstructured math class. At the time of the offenses, the victim was 13 years old and in eighth grade.

---

[1] See OCGA § 16-6-4 (a).

[2] See *Ramirez-Ortiz v. State*, 361 Ga. App. 577 (865 SE2d 206) (2021).

From January 2018 through April 2018, Waller molested the victim at least six or seven times. During one encounter, Waller led the victim to a storage closet in the auditorium, punched him in the stomach, and then grabbed the victim's testicles. At an incident in the fitness room, Waller stuck his hands down the victim's pants. During an incident in Waller's office, Waller again stuck his hands down the victim's pants and encouraged the victim to touch Waller's penis.

In May 2018, the victim disclosed the molestations to his parents. The victim's parents reported the incidents to the principal, and Waller was later arrested. The victim, the victim's parents, and a forensic interviewer testified at trial. The State also played a video recording of the forensic interview for the jury. The jury found Waller guilty of child molestation. Waller filed a motion for new trial, which the trial court denied after a hearing, and this appeal followed.

> To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. This requires a defendant to overcome the strong presumption that trial counsel's performance was adequate. To carry the burden of overcoming this presumption, a defendant must show that no

2

reasonable lawyer would have done what his lawyer did, or would have failed to do what his lawyer did not. In particular, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.[3]

"In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[4] We "review the trial court's decision to admit evidence for an abuse of discretion."[5] With these guiding principles in mind, we now turn to Waller's claims of error.

---

[3] (Citations and punctuation omitted.) *Anthony v. State*, 311 Ga. 293, 294-295 (1) (857 SE2d 682) (2021).

[4] (Citation and punctuation omitted.) *Sanchious v. State*, 359 Ga. App. 649, 655 (2) (859 SE2d 814) (2021).

[5] (Citation and punctuation omitted.) *Pierce v. State*, 302 Ga. 389, 391 (1) (807 SE2d 425) (2017).

1. Waller argues that trial counsel provided ineffective assistance by failing to object to other act evidence.

At trial, Sergeant Andre Pam testified that Waller had been previously accused of striking students in the genitals in September 2017. The then-principal at the school testified that Waller had been cleared of the September 2017 accusation. Waller addressed the September 2017 accusation during his testimony, stating that the complaint had been anonymous, video evidence showed that he did not strike the students, and that he had been ultimately cleared of the charge by the school.

Under OCGA § 24-4-414, "[i]n a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." Evidence that is admissible under this section may still be excluded under OCGA § 24-4-403 if the probative value is substantially outweighed by the danger of unfair prejudice.[6] And the evidence must

---

[6] See *Ramirez-Ortiz v. State*, 361 Ga. App. 577, 584 (4) (a) (865 SE2d 206) (2021).

4

be sufficient to show by a preponderance of the evidence that the defendant committed the prior act of child molestation.[7]

In this case, trial counsel had strategic reasons for not objecting to the 2017 accusation. At the motion for new trial hearing, trial counsel testified that part of the defense strategy was to emphasize that, if the surveillance video had been preserved in this case, then it would have cleared Waller. Defense counsel elicited testimony from Sergeant Pam that there was no video corroboration of the victim's allegations. During closing argument, defense counsel emphasized this point, and drew parallels to the September 2017 accusation where Waller was cleared because of the video surveillance. Defense counsel also argued that the State had failed to call any other witnesses to the prior allegation of abuse. The trial court found that these arguments and the admission of the prior allegation were part of a reasonable trial strategy:

> [I]t is clear that part of the defense strategy was to highlight how easy it was to make false allegations of molestation; that despite the claims of prior acts by [Waller], the State had failed to present any other student to say that [Waller] did anything improper to them; that [Waller] was affirmatively cleared of the prior act; that critical in [Waller] being cleared of the prior act was the video surveillance from the school's system; and that reasonable doubt existed here because this same video

---

[7] See *Frady v. State*, 359 Ga. App. 255, 256 (2) (857 SE2d 260) (2021).

surveillance was in existence at the time [the victim] and his parents leveled their allegations of molestation by [Waller], but neither the school nor the State exercised due diligence and utilized that video surveillance — despite [Waller] even asking them to do so — to either confirm or disprove [the victim's] allegations.

We agree with the trial court that this strategy "fell within the wide range of reasonable professional assistance."[8]

2. Waller argues that trial counsel provided ineffective assistance by failing to object to victim impact evidence.

The victim's mother testified that the victim, after disclosing the molestations to her, felt "tense," "embarrassed," and "emotionally affected." The victim's father testified that the victim became "angry," "quick tempered," and "emotionally upset."

"Under Georgia law, evidence about a crime victim's personal characteristics and the emotional impact of the crime on the victim, the victim's family, and the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial."[9] However, nothing "prohibits testimony from . . . witnesses about a

_____

[8] *Harris v. State*, 280 Ga. 372, 375 (3) (627 SE2d 562) (2006).

[9] *Lofton v. State*, 309 Ga. 349, 363 (6) (b) (ii) (846 SE2d 57) (2020).

victim's demeanor during the time of the alleged acts of molestation."[10] Indeed,

negative changes in mood and behavior around the time of the abuse can support a

conviction for child molestation.[11] Here, the testimony from the victim's parents

about the negative change in behavior as a reaction to the abuse supported the charges

of child molestation and were thus admissible.[12] "Failure to make a meritless

objection cannot support a claim of ineffective assistance."[13]

3. Waller argues that trial counsel provided ineffective assistance by failing to

object to future dangerousness evidence.

At trial, the victim's mother testified that she had reached out to the

superintendent in an effort to ascertain what protocols would be put in place to ensure

these types of molestation did not happen again, but she did not receive a response

---

[10] *Jackson v. State*, 330 Ga. App. 108, 113 (3) (766 SE2d 558) (2014).

[11] See *Woods v. State*, 304 Ga. App. 403, 404-405 (1) (696 SE2d 411) (2010) (evidence that the victim's grades dropped and that she became angry supported the defendant's convictions for child molestation); *Ochoa v. State*, 252 Ga. App. 209, 210 (1) (555 SE2d 857) (2001) (evidence that the victim began to experience negative changes in her mood, temperament, and behavior supported the defendant's conviction for child molestation).

[12] See *Jackson*, 330 Ga. App. at 113 (3).

[13] *Watson v. State*, 303 Ga. 758, 763 (3) (814 SE2d 396) (2018).

7

back. The victim testified at trial that Waller "took advantage of [the victim], and [the victim did not] want [Waller] to take advantage of anyone else."

"[I]t is manifestly improper for a prosecutor to argue to the jury during the guilt-innocence phase of any criminal trial that if found not guilty, a defendant poses a threat of future dangerousness."[14] "A prosecutor argues future dangerousness when the prosecutor asserts there will be more victims if the defendant is not found guilty, or the community or witnesses will be endangered if the defendant is not found guilty."[15] However, "[a] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury . . . will draw that meaning from the plethora of less damaging interpretations."[16]

At the outset, we note that the prosecutor never put forth a future dangerousness argument; rather, Waller points to brief testimony from the victim and the victim's mother. The mother's testimony did not address Waller at all, but instead addressed the school's protocols to deter future molestations generally. While the

---

[14] (Citation and punctuation omitted.) *Fincher v. State*, 363 Ga. App. 439, 455 (8) (870 SE2d 833) (2022).

[15] (Citation and punctuation omitted.) *Hambrick v. State*, 278 Ga. App. 768, 770 (3) (629 SE2d 442) (2006).

[16] (Citation and punctuation omitted.) Id. at 772 (3).

8

victim did testify that he did not want Waller to take advantage of anyone else, this testimony relates to the victim's reasons for his outcry and for testifying at trial. Waller's trial counsel argued at trial that the victim had accused Waller in an attempt to escape punishment from his parents for using his cell phone. Thus, because there was a reasonable explanation for this line of questioning other than future dangerousness, trial counsel did not render ineffective assistance in failing to object to the testimony.[17]

4. Waller argues that trial counsel provided ineffective assistance by failing to object to bolstering evidence.

During cross-examination, trial counsel elicited the following testimony from the victim's mother:

Q: [. . .] He wouldn't lie to you to avoid getting into trouble?
A: He would never put someone or anybody or something in something just so that he would not be in trouble. He does realize, you know, that

---

[17] See *Hambrick*, 278 Ga. App. at 771-772 (3) (holding that while the prosecutor's statements could have been construed for a future dangerousness argument, there was a more reasonable explanation for the remarks); see also *Carr v. State*, 282 Ga. App. 199, 200 (2) (638 SE2d 348) (2006) (holding that the prosecutor's argument urged conviction based on the current evidence and not the future dangerousness on behalf of the defendant).

9

that was a serious statement that he was telling his father and I, and that we would follow up on it.

Trial counsel also elicited testimony from the victim's father that the victim's parents did not punish the victim for using the victim's cell phone because of the victim's outcry.

"A witness's credibility may not be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth. Credibility of a witness is a matter solely within the province of the jury."[18] Here, even assuming that the complained-of testimony is bolstering, Waller has failed to demonstrate prejudice. "The jurors were able to hear from [the victim] and judge [his] credibility for themselves, not only through [his] trial testimony, but also through the recording of [his] forensic interview[.]"[19] "Additionally, the fact that a [parent] believes that [their child] is telling the truth is neither surprising nor damning to the defendant."[20]

---

[18] (Citation and punctuation omitted.) *Zerbarini v. State*, 359 Ga. App. 153, 163 (2) (855 SE2d 87) (2021).

[19] Id. at 164 (3) (a).

[20] Id.

Accordingly, we conclude that it was unlikely that this testimony had much, if any, effect on the verdict.

5. Waller argues that trial counsel provided ineffective assistance by introducing evidence that the school system had settled a civil suit with the victim's parents. At trial, trial counsel elicited testimony from the victim's mother that she had settled her lawsuit against the school for $750,000. Waller contends that this constituted deficient performance because it showed that the school system thought the victim's allegations had merit.

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[21] Trial counsel argued during his opening statement that the victim "and his family [had] a very large, robust financial reason to fabricate this story." In addition to eliciting the settlement amount, trial counsel asked the victim's mother why she settled her suit against the school if her goal was to make sure similar abuse did not happen to other kids. Finally, during closing argument, trial counsel again questioned the motives of the victim's family in accepting the settlement. Considered as a whole, trial counsel's questions during

---

[21] (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

11

cross-examination were "quintessential trial strategy" and did not constitute ineffective assistance of counsel.[22]

6. Waller argues that the trial court abused its discretion in overruling a hearsay objection. Sergeant Pam testified at trial that Waller had access to the video surveillance system at the school, and that Sergeant Pam had obtained this information from another investigating officer.

The erroneous admission of hearsay evidence is not harmful if it is highly probable that it did not contribute to the verdict.[23] "In determining whether the error was harmless, we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict."[24]

Even assuming the testimony was hearsay, it is highly probable that it did not contribute to the verdict. The school principal testified that a login and password was needed to access the surveillance system, and a paraprofessional would not have

---

[22] (Citation and punctuation omitted.) *Watts v. State*, 308 Ga. 455, 460 (2) (841 SE2d 686) (2020).

[23] See *Perez v. State*, 303 Ga. 188, 191 (2) (811 SE2d 331) (2018).

[24] (Citations and punctuation omitted.) *Middlebrooks v. State*, 315 Ga. 671, 684 (1) (884 SE2d 318) (2023).

12

access. Moreover, Sergeant Pam testified that there was no video footage of the molestations because the footage from that time frame had been automatically recorded over. There was no testimony or argument at trial that Waller had somehow accessed and deleted the footage. Given these facts, any error in admitting the hearsay testimony was harmless, and a new trial is not warranted.[25]

7. Waller argues that the cumulative effect of the trial court's errors and trial counsel's deficient performance demands a new trial. For the purpose of this analysis, we assume without deciding one deficiency on the part of trial counsel — failure to object to the bolstering testimony — and one trial court error — admitting the hearsay testimony. As explained in Divisions 4 and 6, we concluded that these errors did not prejudice Waller. For the reasons stated in Divisions 4 and 6 and even considering these errors cumulatively, Waller "has failed to establish that the combined prejudicial effect of these errors requires a new trial."[26]

*Judgment affirmed. Barnes, P. J., and Land, J., concur.*

---

[25] See *Middlebrooks*, 315 Ga. at 686 (1).

[26] (Citation and punctuation omitted.) *Park v. State*, 314 Ga. 733, 745 (4) (879 SE2d 400) (2022).

13